GRIFFIS, P.J.,
for the Court:
¶ 1. This litigation consists of two cases between the same two creditors for possession and the right to sell a Caterpillar excavator. Both parties claim the right to possess and sell the excavator to apply the proceeds to satisfy a debt that is owed.
¶ 2. Cat Financial Services Corporation (“Cat Financial”) brought a replevin action, in county court, for an order awarding it immediate possession of the excavator. The day after Burroughs Diesel Inc. (“Burroughs”) answered the replevin action, Burroughs commenced a claim to enforce its mechanic’s lien in the chancery court. The chancery court transferred the case not to the county court but to the circuit court. A judgment has been entered in each case and appealed. The cases were consolidated and assigned to this Court for review.
¶ 3. Finding reversible error, we reverse and remand these claims to the Circuit Court of Jones County, Mississippi, for further proceedings consistent with this opinion.
FACTS

A. The Equipment

1. The Excavator

¶ 4. On December 6, 2005, Cat Financial leased a 312CL Caterpillar excavator to Randall Walters (“Walters”) for a term of forty-eight months. The lease required Walters to make a lease payment and to maintain the excavator in “good operating order, repair and condition.” Cat Financial perfected its security interest in the excavator.
¶ 5. By February 19, 2008, Walters was in default of the lease. In a letter dated February 19, 2008, Cat Financial “terminated” the lease and “demanded] the immediate return of’ the excavator. Walters did not return the excavator. Cat Financial attempted, but was unable, to repossess the excavator. Cat Financial could not locate the excavator.
¶ 6. Around July 1, 2008, Walters asked Burroughs to make repairs on the excavator. As a result, Burroughs obtained possession of the excavator. Burroughs transported the vandalized excavator from a job site and repaired it. The repairs cost approximately $12,207.02. Walters did not pay for the repairs or pick up the excavator. Burroughs began to charge Walters $25 per day in storage fees.
¶ 7. Before the excavator’s repair, Walters owed Burroughs over $21,000 for an existing repair bill.

2. The Tractor

¶ 8. On May 26, 2009, Walters defaulted on a second piece of equipment. Walters had purchased a Caterpillar Track-Type Tractor from Puckett Machinery Company. Walters financed the purchase with a note and security agreement. Puckett *661 transferred and assigned the security agreement to Cat Financial. Cat Financial’s security interest was perfected.
¶ 9. On July 1, 2009, Cat Financial notified Walters of his default and acceleration of the balance due on the tractor and also provided Walters an opportunity to bring the excavator lease current within ten days or Cat Financial would repossess the excavator.

B. The Replevin Action in County Court

¶ 10. On July 29, 2009, Cat Financial commenced a replevin action against Walters in the County Court of Jones County, Mississippi, which was assigned case number 2009-354. On August 28, 2009, Walters filed for bankruptcy. The bankruptcy filing stayed the replevin action.
¶ 11. Both Cat Financial and Burroughs were listed creditors who were notified of Walters’s bankruptcy action. Cat Financial filed a proof of claim for $14,810.85. Burroughs filed a proof of claim for the repair bill, which was not related to the excavator, but did not file a proof of claim for the excavator repairs. Also, more importantly, Burroughs did not inform the bankruptcy court that it was in possession of an asset of Walters’s bankruptcy estate, i.e. the excavator.
¶ 12. On September 16, 2009, Cat Financial filed a motion to lift the stay in the bankruptcy case. On November 6, 2009, the bankruptcy court ordered that the excavator be abandoned from the bankruptcy estate to Cat Financial. In March 2010, the bankruptcy judge granted Walters a discharge in bankruptcy.
¶ 13. After the abandonment order was entered, Cat Financial learned that Burroughs had possession of the excavator. Burroughs advised Cat Financial that Burroughs would release the excavator once Cat Financial paid for the repairs and storage.
¶ 14. On June 17, 2010, Cat Financial filed an amended replevin complaint to substitute Burroughs as a defendant. On July 26, 2010, Burroughs filed its answer. In the answer, Burroughs claimed that it had made repairs to the excavator in the amount of $12,307.02. Based on this debt, Burroughs asserted a mechanic’s lien against the excavator and claimed that it was entitled to possession of the excavator until the debt was paid, pursuant to Mississippi Code Annotated section 85-7-101 et seq.
¶ 15. Although, Burroughs did not file a counterclaim, the issues of ownership, right to possession, and the debt due under the mechanic’s lien were placed before the County Court of Jones County in the replevin action.

C. The Mechanic’s Lien Action, Initially Filed in Chancery Court and Later Transferred to Circuit Court

¶ 16. On July 27, 2010, the day after filing its answer in county court, Burroughs filed a new lawsuit in the Chancery Court of Jones County, which was assigned ease number 2010-1251, to enforce its mechanic’s lien. In this action, Burroughs made the same allegations that were made in response to the county court replevin action. Burroughs alleged that it had possession of the excavator, had repaired the excavator, and was owed for its labor and parts used in the repair, had not been paid, and was entitled to a mechanic’s lien for the amount of the labor and material charged in the repair of the excavator and storage costs. Burroughs also asked the chancery court to authorize the sale of the excavator to satisfy the mechanic’s lien and for attorney’s fees in bringing the action.
*662 ¶ 17. On August 27, 2010, Cat Financial served its responsive pleading. Cat Financial raised the defense of priority jurisdiction and stated that the claims were pending in an action before the County Court of Jones County. Along with the responsive pleading, Cat Financial served a motion to dismiss or, alternatively, to transfer venue to county court and attached a copy of the county court amended complaint.
¶ 18. On September 27, 2010, the chancery court entered an order that transferred the case to circuit court. The order was not entered after a hearing or based on Cat Financial’s motion, which asked the case be transferred to county court. Instead, in the order, the chancellor simply determined that he “lack[ed] subject matter jurisdiction” and transferred the case to the “Circuit Court of the Second Judicial District of Jones County, Mississippi.” The chancery clerk completed a “Certificate of Transfer” and transferred the chancery court file to the circuit clerk. The circuit court case was assigned case number 2010-96-CV9.

D. Effort to S.ell the Excavator

f 19. In October of 2010, Cat Financial asked Burroughs to sell the excavator to secure a higher price. The proceeds would be held in trust until a court ruled on the mechanic’s lien. Even though Burroughs filed a pleading that asked for the excavator to be sold, Burroughs refused and continued to charge storage fees, which at the time of briefing amounted to $81,700, over twice the amount of the original repair.

E. Proceedings in County and Circuit Court

1. County Court Miscellaneous Pleadings

¶ 20. On March 11, 2011, Cat Financial served its “Rule 34 Request to Inspect Subject Equipment.” The notice requested that Burroughs “allow Cat Financial to inspect the subject Caterpillar equipment prior to any hearing on this case ... for the purposes of determining the condition of the equipment, the extent of repairs made by Burroughs and the operating condition of the equipment.”
¶ 21. On March 17, 2011, Cat Financial served its “Notice of Hearing.” The notice stated that Cat Financial would “bring on for hearing its Amended Verified Complaint for Replevin on [Monday] April 11, 2011 ....”
¶22. On March 22, 2011, the county court judge issued a “Fiat” to Burroughs to appear before the court on “the 11th day of April, 2011, ... to respond to [Cat Financíalas Amended Verified Complaint for Replevin ... and to show cause, if any[,] ... why a writ of replevin should not issue for immediate seizure of the property described in the Amended Verified Complaint for Replevin.”

2. County Court Motion to Dismiss

¶ 28. On [Thursday] April 7, 2011, Burroughs filed a “Motion to Dismiss and Motion to Strike Fiat” in the county court case. In the motion, pursuant to Rules 12(b)(6) and 56 of the Mississippi Rules of Civil Procedure, Burroughs “move[d] to Dismiss, for a Summary Judgment, and to strike the Fiat.” Exhibits attached to the motion included affidavits from Robert Burroughs and Walters, repair bills, and the transfer order in the mechanic’s lien case from the chancery court to the circuit court.
¶24. Burroughs’s affidavit stated that he had picked up the excavator and “made the necessary repairs.” He stated that once he completed the repairs, he invoiced Walters, then began to charge storage fees. The affidavit did not state why the *663 repairs were reasonable and necessary. The invoice stated the excavator appeared vandalized, and Walters asked to repair it “as needed.” The invoice stated Burroughs had “[m]ade all the necessary repairs using all the parts needed.” A list of parts was attached to the invoice and included items such as air filters, radiator hoses, a fuel filter, an oil filter, hose and tube assemblies, and various valves.
¶ 25. Walters’s affidavit stated that he had asked Burroughs to “repair [the excavator] to working condition.” Walters stated that Burroughs had “repaired [the excavator] to working condition.” Walters’s affidavit included the same invoice and parts list.

3. Circuit Court Motion for Summary Judgment

¶ 26. Also on April 7, 2011, Burroughs filed a “Motion for Summary Judgment” in the circuit court case. In the motion, pursuant to Rule 56, Burroughs asked the court for a summary judgment in its favor and “directing a public sale of the subject loader/trackhoe and the proceeds used to pay [Burroughsj’s Mechanic’s Lien in the amount of $38,629.02 plus accumulated storage charges and interest, with the remainder to be paid to [Cat Financial].” The exact same exhibits, with the exception of the transfer order, that were attached to the county court motion to dismiss were attached to the circuit court motion for summary judgment.

k. County Court Hearing

¶ 27. On April 11, 2011, the county court held the hearing scheduled in the notice of hearing and fiat. That day, Cat Financial filed a “Motion for Judicial Notice of Bankruptcy Case Filings.” Cat Financial asked the county court to take judicial notice, pursuant to Mississippi Rule of Evidence 201, of Walters’s bankruptcy petition, property schedules, the abandonment order, the discharge order and a notice of Walters’s address change. Cat Financial also filed a “Notice of Filing” that stated it was giving notice of its “Motion to Strike Affirmative Proof by Burroughs ... of the repairs to the subject equipment, if any, and the necessity and reasonableness thereof.”
¶ 28. At the April 11 hearing, Cat Financial announced it was there to obtain a writ of replevin. Burroughs announced that it was there on its motion to dismiss. The parties announced that they agreed to the following stipulations:
This Caterpillar piece of equipment was a very expensive piece of equipment, something on the order of $100,000 when it was originally leased. [Cat Financial] leased it, making [Cat Financial] the owner. Mr. Walters filed bankruptcy after he defaulted on the payments under the lease. In the bankruptcy, [Cat Financial] was listed as a creditor; Burroughs Diesel was listed as a creditor.
The debts that were listed in bankruptcy as to Burroughs Diesel didn’t have anything to do with the lien that they claim they have on this equipment. So Burroughs’s lien wasn’t listed in the bankruptcy. We moved the bankruptcy court to lift the stay to us, to abandon the stay, then we attempted to collect the property and learned that Burroughs supposedly has it. Now, we are here with Burroughs, as the party of the replevin action.
That’s the basic facts that I think that we can agree to.
[Counsel for Burroughs]: Burroughs Diesel agrees to that.
¶ 29. The matters in dispute at the hearing were under the proper jurisdiction for the determination of possession, the enforcement of a mechanic’s lien, the validity of the asserted mechanic’s lien, the *664 extent of the alleged repairs, the inability to inspect, the date Cat Financial terminated the lease, and the applicability of a storage fee statute.

5. County Court Decision

¶ 30. On April 14, 2011, the county court entered an “Order Denying Relief Sought in Complainant’s Verified Complaint for Replevin.” In this order, the county court judge referred to the mechanic’s lien case that Burroughs filed originally in chancery court and that was transferred to circuit court. The county court then ruled:
A replevin action is an action for immediate possession of personal property. [Miss.Code Ann. §§ ] 11-S7-101[ & ] 11-37-141 [ (Rev.2012) ]. Mississippi law is clear that a person asserting a mechan-icals lien under [section] 85-7-101, has the right to retain possession of the repaired article until the mechanic’s lien is satisfied. The relief sought in the Amended Verified Complaint for Re-plevin is therefore denied. This action is dismissed with each party to bear its own costs.

6. Proceedings in Circuit Court

¶ 31. On May 12, 2011, Cat Financial served its notice of appeal of the county court judgment and designation of the record. The circuit court acquired appellate jurisdiction over the county court judgment.
¶ 32. On May 27, 2011, Cat Financial served its “Rule 37 Motion to Dismiss and/or Compel.” In this motion, Cat Financial asked the court to dismiss Burroughs’s claim because Burroughs had willfully violated Cat Financial’s request for inspection of the excavator or to compel Burroughs to produce the excavator for Cat Financial’s inspection.
¶ 33. On July 11, 2011, Burroughs served its “Supplemental Motion for Summary Judgment.” In this motion, Burroughs referred to its earlier motion for summary judgment and the county court decision, and asked for the court to authorize the sale of the excavator as well as the award of expenses. The same day, Burroughs responded to Cat Financial’s motion to dismiss and/or compel. All of the motions were set for hearing on July 25, 2011.
¶ 34. On July 15, 2011, Cat Financial filed the transcript of the county court hearing held on April 11, 2011.
¶ 35. A hearing was held on July 25, 2011. The circuit court recognized that the county court order was on appeal and was also pending before the circuit court. It was pointed out that the underlying facts for both the county court replevin action and the circuit court mechanic’s lien action are identical. Also, the documents and affidavits were the same in both actions. The court did not make a ruling during the hearing.
¶ 36. On September 1, 2011, before the due date of Cat Financial’s brief in the appeal of the county court action, the circuit court summarily affirmed the county court’s decision. The circuit court’s order stated:
This action came on request of [Cat Financial] for judicial review of a decision of the Jones County [County] Court ... where the County Court entered its Order Denying Relief Sought in Complainant’s Amended Verified Complaint for Replevin on April 14, 2011, After careful review and consideration of the complete record herein, the Court hereby finds and adjudicates that the decision of the County Court ... was supported by the evidence, said Court properly applied the law to the facts and the decision of the County *665 Court should be affirmed by this Honorable Court.
Cat Financial served its notice of appeal on September 29, 2011. The Clerk of this Court assigned this appeal case number 2011-CA-1469.
¶ 37. On September 13, 2011, Burroughs served a notice of hearing for its motion for summary judgment to be held on November 7, 2011.
¶ 38. On October 4, without a hearing, the court entered an order that denied Cat Financial’s Rule 37 motion to dismiss and/or compel.
¶ 39. On November 7, 2011, the circuit court held a hearing on Burroughs’s motion for summary judgment. Cat Financial filed a motion that asked the court to take judicial notice of pleadings filed in Walters’s bankruptcy case. The court did not make a ruling during the hearing and asked for the submission of proposed findings of fact and conclusions of law.
¶ 40. On December 5, 2011, the circuit court entered an “Order Granting Motion for Summary Judgment and for Sale of Personal Property.” In this order, the circuit court granted Burroughs’s mechanic’s lien under Mississippi Code Annotated section 85-7-101 (Rev.2011) for the labor and material to repair the excavator in the amount of $12,307.02, granted a lien for storage costs under Mississippi Code Annotated section 85-7-251 (Rev.2011) in the amount of $30,925, and awarded of attorney’s fees in the amount of twenty-five percent of the amount of the lien, which was $10,808. The total judgment was for $54,040.20. The court also authorized the sale of the excavator, with the proceeds of the sale first going to Burroughs to satisfy the court’s award and any excess amount being paid to Cat Financial.
¶ 41. On December 8, 2011, Cat Financial noticed its appeal of the circuit court judgment. The Clerk of this Court assigned this appeal case number 2011-CA-1851.
¶42. By order of the supreme court, dated April 2, 2012, the supreme court granted Burroughs’s motion to consolidate appeals.
ANALYSIS
¶ 43. To this point, the procedural nature of these cases seems to be contrary to the purpose of the replevin statute[1] and the Mississippi Rules of Civil Procedure.[2] The claims have been litigated separately, before three different courts. The replev-in claim is on appeal from a final judgment, and the mechanic’s lien claim is an appeal of a summary judgment. These cases have been consolidated before this Court.
¶ 44. Due to this awkward procedural route, this Court has decided to consider the separate judgments and the issues presented in such a manner as to facilitate the “just, speedy, and inexpensive determination of’ this action from this point forward. M.R.C.P. 1. For this reason, we do not consider the arguments in the order that they have been presented by the parties. First, we will address the issues that require our reversal of the judgments on appeal. Then, we will address other argu- *666 merits that, although they have merit, do not assist the Court in reaching the ultimate resolution of this appeal.

A. The Appeal of the Circuit Court Judgment

¶ 45. We begin with the review of the circuit court judgment that granted a monetary award in favor of Burroughs.

1. Standard of Review

¶46. In Waggoner v. Williamson, 8 So.3d 147, 152-53 (¶ 11) (Miss.2009), the supreme court succinctly stated the standard of review:
In reviewing a trial court’s grant or denial of summary judgment, the well-established standard of review is de novo. Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment motion is only properly granted when no genuine issue of material fact exists. The evidence must be viewed in the light most favorable to the party against whom the motion has been made. The moving party has the burden of demonstrating that no genuine issue of material fact(s) exists, and the non-moving party must be given the benefit of the doubt concerning the existence of a material fact.
(Citations and quotations omitted).

2. Review of the Award of Attorney’s Fees

¶47. We begin with the circuit court’s decision to award Burroughs $10,808 in attorney’s fees, twenty-five percent of the amount of the lien awarded. The circuit court did not specifically state the basis for its award of attorney’s fees. There was no legal basis for this award.
¶48. Burroughs motion for summary judgment did not ask for an award of attorney’s fees. Instead, Burroughs’s supplemental motion for summary judgment asked for attorney’s fees and expenses “for defending Burroughs in County Court and for bringing suit against Cat Financial in order to defend its own statutorily permit ted Mechanic’s Lien.”
¶ 49. Attorney’s fees may only be awarded if there is statutory authority or a contractual provision that authorizes the award of attorney’s fees, or if an award of punitive damages is proper. Fulton v. Miss. Farm Bureau Cos. Ins. Co., 105 So.3d 284, 287-88 (¶¶ 16-17) (Miss.2012). None of these circumstances were present here. Burroughs agrees that the mechanic’s lien or storage lien statutes that it advances do not allow attorney’s fees.
¶ 50. To support the award, Burroughs argues:
[Cat Financial] neglects to mention that [Burroughs] successfully defended against [Cat Financial]’s Motion to Dismiss and/or Compel. As this Court is more than aware, under Rule 37(a)(4) of the M.R.C.P., a party who successfully defends against a motion to compel may recover its expenses and costs incurred in defending against the motion unless the court finds that the motion was substantially justified. In this case, the Circuit Court reviewed Appellant’s Motion to Dismiss and/or Compel and ultimately entered its Order finding that the Motion was not well-taken and should be denied. As such, the record is clear that [Burroughs] was in fact entitled to an award of reasonable attorney’s fees in successfully defending against the [Cat Financial]’s Motion to Dismiss and/or Compel.
*667 (Record citation omitted). The circuit court did not award attorney’s fees as a sanction under Rule 37. Neither the order, denying the motion to compel nor the final judgment indicated that attorney’s fees were appropriate under Rule 87. Therefore, we reject this argument.
¶ 51. Burroughs was not entitled to a summary judgment that awarded attorney’s fees. Accordingly, we reverse the circuit court’s judgment that awarded Burroughs attorney’s fees as a matter of law. Because this matter was brought before the court on a summary judgment, we remand this claim to the circuit court for further proceedings.

3. Review of the Award of Storage Costs

¶ 52, Next, the circuit court granted Burroughs’s claim for a $30,925 lien for storage costs, based on Mississippi Code Annotated section 85-7-251.
¶ 53. Section 85-7-251 provides:
Sale of motor vehicle for towing and storage cost; notice requirement
(1) The owner of a motor vehicle that has been towed at his request or at the direction of a law enforcement officer, or towed upon request of a real property owner upon whose property a vehicle has been left without permission of the real property owner for more than five (5) days, shall be liable for the reasonable price of towing and storage of such vehicle; and the towing company to whom the price of such labor and storage costs may be due shall have the right to retain possession of such motor vehicle until the price is paid.
(2) Within twenty-four (24) hours, the towing company shall report to the local law enforcement agency having jurisdiction any vehicle that has been towed unless the vehicle was towed at the request of the owner of the vehicle. If the owner of a towed vehicle has not contacted the towing company within five (5) business days of the initial tow, the towing company shall obtain from the appropriate authority the names and addresses of any owner and lienholder. If the information from the appropriate authority fails to disclose the owner or lienholdér, a good faith effort shall be made by the towing company to locate ownership, including a check for tag information, inspection sticker, or any papers in the vehicle that may indicate ownership. Upon location of the owner and lienholder, the towing company shall notify them by registered mail of the amount due for towing, postmarked no later than the tenth day following the initial tow. If such amount shall not be paid within thirty (30) days from the initial tow, the towing company to whom such charges are payable shall notify by certified mail any legal owner and holder of any lien, as disclosed by the motor vehicle title records or other investigation, of notice of sale of the property. If such property has not been redeemed within ten (10) days after the mailing of the certified letter, the towing company may commence sale of the property at public auction. The towing company shall publish for two (2) consecutive weeks a notice of sale in the newspaper having circulation in the county where the vehicle was initially towed. The proceeds of the sale of such property in excess of the amount needed to pay the towing, reasonable storage and necessary expenses of the procedures required by this section shall be held by the towing company for a period of six (6) months, and, if not reclaimed by the owner thereof within such time, shall become the property of the county and be paid to the chancery clerk of the county in which the sale was held to be deposited into the county general fund, *668 subject, however, to any rights of the recorded lienholder.
(3) The failure to make a good faith effort to comply with the requirements of this section shall preclude the imposition of any storage charges or towing charges against the towed vehicle.
(4) Every towing company shall maintain accurate records for a period of three (3) years, which records shall identify the vehicles it has towed and stored and all procedures that it has taken to comply with the provisions of this chapter.
¶54. Cat Financial argues that Burroughs’s lien, if any, did not include storage fees. In response, Burroughs argues that this issue is not an appropriate issue for appeal because the issue was never raised before the trial court. We disagree. The record demonstrates that the issue of storage fees was addressed in the trial court proceedings.
¶55. Cat Financial argues that Burroughs is not entitled to a lien under section 85-7-251 because Burroughs did not follow the statutory requirements. For example, the statute requires owner authorization and thirty days notice before sale. “The owner of a motor vehicle that has been towed at his request ... shall be liable for the reasonable price of towing and storage ...” Miss.Code Ann. § 85-7-251(1). “If the owner of a towed vehicle has not contacted the towing company within five (5) business days of the initial tow, the towing company shall obtain from the appropriate authority the names and addresses of any owner and lienholder.” Miss.Code Ann. § 85-7-251(2). The towing company shall make a “good faith effort,” “including a check for tag information, inspection sticker, or any papers in the vehicle.” Id.
¶56. The statute has other requirements. The towing company must send notice of the amount due “no later than the tenth day following the initial tow.” Id. If not paid within thirty days of the initial tow, the towing company must notify “any legal owner” and any lienholder “of notice of sale of the. property” at public auction. Id. “The failure to make a good faith effort to comply with the requirements of this section shall preclude the imposition of any storage charges or towing charges against the towed vehicle.” Miss.Code Ann. § 85-7-251(3).
¶ 57. There was nothing in the stipulation before the county court about storage costs. The affidavits and materials filed in support of the motion for summary judgment discuss storage costs, but do not satisfy the statutory requirements of section 85-7-251. Therefore, under Mississippi Rule of Civil Procedure 56(c), Burroughs was not entitled to a summary judgment.
¶ 58. We reverse the circuit court’s judgment as it relates to the award of a $30,925 lien against the excavator for storage costs. Because this matter was brought before the court on a summary judgment, we remand this claim to the circuit court for further proceedings.

Jp. Review of the Award of a Mechanic’s Lien

¶ 59. The circuit court granted Burroughs’s claim for a mechanic’s lien under Mississippi Code Annotated section 85-7-101 for the labor and material to repair the excavator in the amount of $12,307.02. Section 85-7-101 provides:
Articles constructed, manufactured or repaired; lien for labor and materials.
Except as otherwise provided in Section 85-7-107, all carnages, buggies, wagons, plows, or any article constructed, manufactured or repaired for any person, and at his instance, shall be liable for the price of the labor and material em *669 ployed in constructing, manufacturing or repairing the same; and the mechanic to whom the price of said labor and material may be due shall have the right to retain possession of such things so constructed, manufactured or repaired until the price be paid; and if the same shall not be paid within thirty (30) days, he may commence his suit in any court of competent jurisdiction and upon proof of the value of the labor and materials employed in such repairs, manufacture or construction, he shall be entitled to judgment against the party for whom such labor was done or materials furnished, with costs, as in other cases, and to a special order for the sale of the property retained in his possession for the payment thereof, with costs, and to an execution, as in other cases, for the residue of what remains unpaid after sale of the property.
(Emphasis added).
¶ 60. There was no dispute over certain material facts. Cat Financial leased the excavator to Walters, making Cat Financial the owner of the excavator. Walters defaulted on the lease. Cat Financial declared default and sought possession of the excavator. Walters filed bankruptcy and the excavator was abandoned to Cat Financial. Burroughs did not file a claim in bankruptcy on the excavator. Walters delivered the excavator to Burroughs and asked Burroughs to make repairs. Burroughs made repairs and stored the excavator.
¶ 61. There are material facts in dispute. Cat Financial claims that, as the owner of the excavator, it did not authorize Burroughs to make the repairs. Cat Financial also claims that since.it has not been allowed to inspect the excavator,, it cannot determine if the repairs Burroughs made were reasonable or necessary.

a. Owner Authorization

¶ 62. Mississippi Code Annotated section 85-7-101 (Rev.2011) provides a mechanic with the ability to retain possession and commence a suit to recover for repairs made to articles, other than motor vehicles, when those repairs are made “for any person, and at his instance.” In Huntley v. Drummond, 226 Miss. 753, 758, 85 So.2d 188, 190 (1956), the supreme court found that “at his instance” refers to the owner of the property. An owner can consent to repairs expressly or implicitly. Id. With implied consent, “the facts from which the inference of consent is to be drawn must be such as to indicate at least a willingness on the part of the owner to have the improvements made ....” Id.
¶ 63. Cat Financial’s lease required Walters to keep the excavator in good operating order. The facts in Martin v. Broadhead, 202 Miss. 281, 32 So.2d 433 (1947), are similar in one regard to Cat Financial’s case. There, the lease required the lessee to keep a truck in repair. Id. at 286, 32 So.2d at 433. However, the lease there was never cancelled or sought to be cancelled, so when the truck was repaired, a contractual duty to repair still existed. Id. at 287, 32 So.2d at 434.
¶ 64. Here, we find that there is a genuine issue of a material fact in dispute — who owned the excavator in July 2008, when Burroughs repaired the excavator. If the lease was in effect in July 2008, then the mechanic’s lien is valid (assuming the repairs were reasonable and necessary). If the lease was not in effect, then there was no owner authorization for the repairs, and the rule of caveat emptor applied to Burroughs.
¶ 65. In Moorhead Motor Co. v. H.D. Walker Auto Co., 133 Miss. 63, 69, 97 So. 486, 486 (1923), the owner did not authorize repairs and did not have knowledge of the repairs. Similarly, Cat Financial did *670 not know that Burroughs had the excavator because Burroughs had repaired the excavator at Walters’s request. The mechanic in Moorhead did not know the owner was actually a person other than the person who authorized the repairs. Id. The court held that “[t]he rule of caveat emptor as to the ownership and recovery of personal property has long prevailed in this state_” Id., 97 So. at 487. It does not make a difference whether Burroughs knew or did not know that Cat Financial owned the excavator while Walter possessed it when the repairs were made. The “owner is not liable for repairs to personal property, unless expressly or impliedly authorized .... ” Id., 97 So. at 488. “Mississippi case law rejects [the] argument that liability attaches to the titleholder instead of the party who ordered the repairs.” Allstate Ins. Co. v. Green, 794 So.2d 170,178 (¶ 26) (Miss.2001).
¶ 66. Cat Financial argues that the lease was terminated in February of 2008. Burroughs argues the lease was terminated in 2009. Cat Financial’s letter, dated February 19, 2008, notified Walters of his breach of the excavator lease. The letter stated that “the Agreement hereby is and shall be deemed to be terminated.” This letter, however, was neither offered nor admitted into evidence at the county court hearing. The letter was filed with the county court on April 20, 2011, which was six days after the county court order that denied Cat Financial’s claim for replevin, and with the circuit court.
¶ 67. Cat Financial’s letter, dated July 1, 2009, was filed with the replevin complaint on July 29, 2009. This letter asked Walters to “recall” several facts and reminded him that the payments under the excavator lease had already been accelerated. The letter also updated the amount due from $80,936.08 in the 2008 letter to $90,354.63. The letter also discussed the tractor security agreement that Puckett had assigned to Cat Financial. In the letter, Cat Financial stated that it had elected to accelerate the tractor contract balance that totaled $99,942.27. The letter also stated: “[B]e advised that you have ten (10) days from the date of this letter in which to bring the Lease and the Contract current.” This letter was neither offered nor admitted into evidence at the county court hearing.

b. Reasonable and Necessary Repairs

¶ 68. To prove a mechanic’s lien, Burroughs must show that “the repairs were reasonably necessary to preserve the property and permit its ordinary operation, and prevent deterioration.” Funchess v. Pennington, 205 Miss. 500, 513, 39 So.2d 1, 2 (1949). Cat Financial argues, even if the repairs were authorized, Burroughs cannot prove the repairs were reasonable and necessary. Cat Financial argues that the affidavits of Robert Burroughs and Walters were insufficient to prove reasonable and necessary repairs.
¶ 69. This is similar to Funchess, Moorhead, and Broom & Son v. Dale & Sons, 109 Miss. 52, 67 So. 659 (1915), three cases where stipulations by the parties were the only evidence presented at a bench trial.
¶ 70. In Funchess, the question was whether the appellant, through stipulations that included an itemized list and no other testimony, showed he had a valid mechanic’s lien and whether the repairs were reasonable and necessary. Funchess, 205 Miss, at 512, 39 So.2d at 1. The burden of proof was on the person who claimed the mechanic’s lien. Id. The stipulations there avoided the word “repairs.” Id., 39 So.2d at 2. The stipulations did not state that the work performed on the truck was reasonable and necessary. Id. at 513, 39 So.2d at 2. The supreme court affirmed the trial judge’s decision that the stipulations with *671 the list did not meet the lienholder’s burden. Id. at 515, 39 So.2d at 3.
¶ 71. In Broom, the stipulations stated that the labor and materials constituted repairs and that the titleholder knew the repairs were being made and did not object. Broom, 109 Miss, at 58, 67 So. at 660. The titleholder there agreed that the lien holder had a mechanic’s lien. Id. The only question before the court was whose interest had priority. Id. at 59, 67 So. at 660. The supreme court found that the mechanic’s lien had priority. Id. at 64, 67 So. at 662.
¶ 72. In Moorhead, there were also stipulations and an itemized list. Moor-head, 133 Miss, at 69, 97 So. at 487. The supreme court there found the repairs named in the list were not reasonable and necessary. Id. at 72, 97 So. at 487. There was no proof the alleged repairs were necessary. Id. Further, the titleholder did not authorize or have knowledge of the repairs. Id. at 73, 97 So. at 487.
¶ 73. Here, considering the motion for summary judgment, there was no evidence about the repairs. The stipulations here did not address whether “the repairs were reasonably necessary to preserve the property and permit its ordinary operation, and prevent deterioration.” Funchess, 205 Miss, at 513, 39 So.2d at 2. The stipulations in Moorhead and Funchess included lists. The stipulations here did not include the list of parts because the list was attached to the affidavits that were not admitted into evidence. ■
¶ 74. Here, the county court’s order did not address the reasonableness or necessity of the repairs. The stipulations were not sufficient evidence for the county court to find proof that Burroughs’s repairs were reasonable and necessary. In the motion for summary judgment, Burroughs offered affidavits, but the affidavits do not state that the repairs were reasonable and necessary. Further, in both actions, Cat Financial claims that Burroughs’s failure and refusal to allow the inspection of the excavator prevented it from determining whether the repairs were reasonable and necessary.
c. Conclusion
¶ 75. As to the circuit court’s grant of summary judgment to Burroughs on its mechanic’s lien under Mississippi Code Annotated section 85-7-101 for the labor and material to repair the excavator in the amount of $12,307.02, we find that there were genuine issues of material facts in dispute. Therefore, under Mississippi Rule of Civil Procedure 56(e), Burroughs was not entitled to summary judgment. We reverse the circuit court’s judgment as it relates to the award of damages for the mechanic’s lien and remand this claim to the circuit court for further proceedings.

B. The Appeal of the County Court Judgment

¶ 76. Next, we briefly discuss the county court judgment. The county court ruled: .
A replevin action is an action for immediate possession of personal property. [Miss.Code Ann. §§ ] 11 — 37—101[ & ] 11-37-141. Mississippi law is clear that a person asserting a mechanic[’]s lien under [section] 85-7-101, has the right to retain possession of the repaired article until the mechanic’s lien is satisfied. The relief sought in the Amended Verified Complaint for Replevin is therefore denied. This action is dismissed with each, party to bear its own costs.
¶ 77. This order actually decided nothing. The order did not resolve any claim with prejudice. The county court decided that it would- not grant Cat Financial’s request for replevin, i.e., immediate possession, and anticipated that Cat Financial *672 may be entitled to possession upon the resolution of the mechanic’s lien action, pending in circuit court. We view the county court’s order as an inartful attempt to transfer the replevin action to the circuit court so that all claims would be pending before and be decided by one court.
¶ 78. The county court order was appealed to the circuit court. However, the circuit court affirmed the judgment before Cat Financial even filed its appellant’s brief and stated the issues that were raised on appeal. We can find no reason for an appellate court to decide an appeal before the appellant is given an opportunity to file the appellant’s brief.
¶ 79. Because we have reversed and remanded the circuit court judgment, under Mississippi Rule of Civil Procedure 1, we instruct the circuit court on remand to decide Cat Financial’s claim for replevin and Burroughs’s claim for enforcement of a mechanic’s lien.

C. Other Issues Raised in the Appeals

¶ 80. We recognize that there were other issues raised by the parties in this appeal. We have determined that these issues are not dispositive but merit our brief discussion.

1. Priority Jurisdiction

¶ 81. Cat Financial argues that the county court should have decided all of the parties’ dispute. Burroughs argues that, at the time of the filing, the county court was not a court of concurrent jurisdiction, and priority jurisdiction did not apply.
¶ 82. Cat Financial’s replevin action is a statutory action under Mississippi Code Annotated section 11-37-101 et seq. A replevin action may be filed in county court. Miss.Code Ann. § 11 — 37—101(e). County courts have original subject-matter jurisdiction over matters based in law and equity where the amount in controversy does not exceed $200,000. Miss.Code Ann. § 9-9-21(1) (Supp.2012). The county court’s jurisdiction is concurrent with both circuit and chancery courts. Id.
¶ 83. Burroughs’s claim to enforce a mechanic’s lien is also a statutory claim, under Mississippi Code Annotated section 85-7-101. The statute provides that a claim to enforce a mechanic’s lien may be filed “in any court of competent jurisdiction.” Id. As a result, Burroughs could have filed its claim in county court.
¶ 84. Cat Financial and Burroughs both cite a legal principle from the same case, Scruggs, Millette, Bozeman & Dent, P.A. v. Merkel & Cocke, P.A., 804 So.2d 1000, 1006 (¶ 15) (Miss.2001), where the court held:
This Court has repeatedly stated that it is a well established rule in this jurisdiction that where two (2) suits between the same parties over the same controversy are brought in courts of concurrent jurisdiction, the court which first acquires jurisdiction retains jurisdiction over the whole controversy to the exclusion or abatement of the second suit.... [Tjhis Court [has] also stated that in this state priority of jurisdiction between courts' of concurrent jurisdiction is determined by the date the initial pleading is filed, provided process issues in due course.
(Internal quotations and citations omitted).
¶ 85. Burroughs argues that the chancery court could not have transferred the case to county court because, at the time, the county court was not a court of concurrent jurisdiction. Burroughs frames the issue in the form of where the chancery court could have “transfer[red]” the case as opposed to where Burroughs could have filed the claim as a counterclaim.
¶ 86. We recognize that priority jurisdiction is a well-entrenched doctrine. Abi- *673 aca Drainage Dist. v. Albert Theis & Sons, 185 Miss. 110, 111, 187 So. 200, 201 (1939). However, this issue will not ultimately decide this case.[3]
¶ 87. We include this discussion because we recognize that this issue could have been avoided if Burroughs had filed a compulsory counterclaim under Rule 13(a) of the Mississippi Rules of Civil Procedure, which provides:
Compulsory Counter-claims. A pleading shall state as a counter-claim any claim which at the time of serving the pleading the pleader has against any opposing party if it arises out of the transaction or occurrence that is the subject matter of the opposing party’s claim and does not require for its adjudication the presence of third parties over whom the court cannot acquire jurisdiction. But the pleader need not state the claim if:
(1) at the time the action was commenced the claim was the subject of another pending action; or
(2) the opposing party brought suit upon his claim by attachment or other process by which the court did not acquire jurisdiction to render a personal judgment on that claim, and the pleader is not stating any counterclaim under this Rule 13; or
(3) the opposing party’s claim is one which an insurer is defending.
In the event an otherwise compulsory counter-claim is not asserted in reliance upon any exception stated in paragraph (a), re-litigation of the claim may nevertheless be barred by the doctrines of res judicata or collateral estoppel by judgment in the event certain issues are determined adversely to the party electing not to assert the claim.
The comment to the rule provides:
The purpose of Rule 13 is to grant the court broad discretion to allow claims to be joined in order to expedite the resolution of all the controversies between the parties in one suit and to eliminate the inordinate expense occasioned by circuity of action and multiple litigation:
It is, and should be, a paramount concern of the judiciary to prevent multiple suits where one suit will suffice. There is a tendency, perhaps, to forget that one who undergoes the rigors of an action, with all of its traumatic impact, loss of time, delay, substantial expense and disruption of his affairs, with consequent appeals and possible retrials and still other appeals, should be spared having to do this more often than is strictly necessary. Even the successful party after bearing the expense of one trial and of one appeal is, in many instances, hardly a winner.
Under Rule 13(a), some claims may now be asserted as counter-claims which heretofore could have been interposed only by way of recoupment or set-off at law, or by cross-bill in equity. Rule 13(a), however, makes it immaterial whether the counter-claim is legal or equitable, or in contract or in tort, or even whether it has any connection whatever with the plaintiffs claim. A counter-claim is compulsory if there is any logical relation between the original *674 claim and the counter-claim. Under 13(b), all other claims may be brought by a party in one action.
Under Rule 13(c), a counter-claim may ask for more or different relief than that sought by the opposing party.
(Statutory and case citations omitted).
¶ 88. We also recognize the doctrines of ancillary and pendent jurisdiction. In Hall v. Corbin, 478 So.2d 253, 255 (Miss. 1985), the supreme court held:
We (and every other court in the land) have long held that once a court acquired actual subject matter jurisdiction of an action, other claims (whether asserted by the one or more of the original parties or by new or intervening parties), ancillary or pendent to the original claim could also be litigated in that action even though the ancillary or pendent claim standing alone may have been beyond the court’s jurisdiction.
The facts in Hall are similar to this case. Linnie Hall was “seriously ill” when she gave W.C. Hall, her husband, $6,000 from her personal funds. Id. at 254. W.C. deposited the funds in their joint account. Id. The next day, he used $5,000 of the funds to buy a car that was titled in his name only. Id. A couple of days later, W.C. allowed Gay Jetton, Linnie’s sister, to take the car to the hospital to visit Linnie. Gay failed to return the car. Id. Several months later, W.C. filed a complaint in replevin against Gay and David Corban, who owned the house where the car was located. Id. In their answer, Gay and David claimed that W.C. was not entitled to possession of the car. Marion Costello filed a motion to intervene on behalf of Linnie and claimed a possessory interest in the car because W.C. had fraudulently used Linnie’s money to buy the car. Id.
¶89. The trial court determined that intervention was proper because the claim was ancillary to the original replevin action. Id. at 255. The supreme court likewise determined that intervention was proper and then:
Once intervention is permitted under the rules, it follows that intervenors may join as many claims as they have against the opposing party. Rule 18, MRCP. By virtue of the familiar concepts of ancillary or pendent jurisdiction, it does not matter that some of the claims sound in equity. We have recognized on many occasions that under the rule, circuit courts may be called upon to grant equitable relief where such claims are ancillary to the civil actions in law in order “to secure the just, speedy and inexpensive determination of every action.” Rule 1, MRCP.
Hall, 478 So.2d at 257 (case citation omitted).
¶ 90. In future similar actions, it would be preferable for such a dispute as this one to be determined in one court procéeding.
2. Discovery■ — The Right to Inspect
¶ 91. Cat Financial has repeatedly sought to inspect the excavator to verify its condition and the repairs that were made. In the record, we find that Cat Financial made attempts at inspection on September 17, 2010, October 20, 2010, and March 11, 2011. Burroughs provided various excuses about why the inspection could not occur.
¶ 92. Cat Financial filed a request to inspect under Mississippi Rule of Civil Procedure 34 and asked for inspection dates. Burroughs did not object or respond to Cat Financial’s Rule 34 request; then Cat Financial sent good-faith correspondence. On April A, 2011, Burroughs’s counsel stated he was unable to attend an inspection before trial. Cat Financial advised Burroughs that it only required a short inspection to crank the excavator to *675 see if it operated. Burroughs did not allow inspection even after the hearing.
¶ 93. Burroughs has responded that the parties could not agree on a time to hold the inspection. Burroughs argues that Cat Financial never took any other actions like filing a motion to compel, and no court order compelled an inspection. But, Cat Financial did file a motion to compel the inspection, which was denied. Burroughs attempted to use the lack of inspection offensively and stated that Cat Financial did not “put on any testimony to contradict” that the repairs “were reasonable and necessary to get [the excavator] in running operation.”
¶ 94. Court intervention should not be required to obtain an inspection. However, once court intervention is requested, the county and circuit courts should immediately order the inspection or require the parties to appear and show cause why it did not occur.
¶ 95. Cat Financial seeks the dismissal of Burroughs’s asserted mechanic’s lien for discovery violations. Burroughs argues that dismissal is only contemplated when a party disobeys a court order, and there was no order because Cat Financial never filed a motion to compel. A “trial court should dismiss a cause of action for failure to comply with discovery only under the most extreme circumstances.” Pierce v. Heritage Props., Inc., 688 So.2d 1385, 1388 (Miss.1997).
¶ 96. We do not find that dismissal is the appropriate remedy. On remand, we encourage the parties, or the court if necessary, to see to it that the inspection occurs promptly. In a case such as this, we expect the parties to work together to ensure a prompt and reasonable inspection occurs early in the litigation.

D. Conclusion

¶ 97. The consolidated cases are reversed and remanded to the Circuit Court of Jones County, Mississippi. We note that one of the eases originated from county court. On remand, it is of no consequence that one of the cases originated in county court. Mississippi Code Annotated section 11-51-79 (Rev.2012) requires that these cases be remanded to the circuit court, not the county court, for further proceedings and consideration of all claims, possession and enforcement of liens.
¶ 98. THE JUDGMENTS OF THE CIRCUIT COURT OF JONES COUNTY ARE REVERSED, AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE AP-PELLEE.
LEE, C.J., ISHEE, ROBERTS, MAXWELL AND JAMES, JJ., CONCUR. IRVING, P.J., AND BARNES, J., CONCUR IN PART AND IN THE RESULT. CARLTON, J., CONCURS IN RESULT ONLY. FAIR, J., NOT PARTICIPATING.

. Mississippi Code Annotated section 11-ST-MS (Rev.2012) provides that replevin proceedings are to be an efficient way to resolve a dispute over ownership of property. The statute expressly provides that replevin claims are to be treated as "preference cases” and "shall be heard on the merits at the earliest possible date, with the view of reaching an early determination as to the rights of the parties to the property in question.” Id.

. Certainly, Rules 1, 13 and 18 of the Mississippi Rules of Civil Procedure seek to avoid the piecemeal litigation that this action has taken.

. We note that Mississippi Code Annotated section 11-51-79 (Rev.2012) provides for appeals from county court. This section states:
No appeals or certiorari shall be taken from any interlocutory order of the county court, but if any matter or cause be unreasonably delayed of final judgment therein, it shall be good cause for an order of transfer to the circuit or chancery court upon application therefor to the circuit judge or chancellor.
Although not specifically stated, the county court order appears to be an interlocutory transfer under this section to the circuit court.